UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY DALE GRANT, | Case No. CV 15-3507-KK |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Gregory Dale Grant ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to Title 28 of the United States Code, section 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///

///

///

I.

**PROCEDURAL HISTORY**

On January 4, 2012, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of November 1, 2011. Administrative Record ("AR") at 144, 146. Plaintiff's applications were denied initially on May 22, 2012.[1] Id. at 87. On July 12, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 95. On April 9, 2013, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 33. A vocational expert ("VE") also testified at the hearing. Id. On August 29, 2013, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Id. at 22.

On October 21, 2013, Plaintiff filed a request for the Agency's Appeals Council to review the ALJ's decision. Id. at 9. On April 20, 2015, the Appeals Council denied Plaintiff's request for review. Id. at 1.

On May 11, 2015, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed March 7, 2016, which the Court has taken under submission without oral argument. Dkt. 20, JS.

II.

**PLAINTIFF'S BACKGROUND**

Plaintiff was born on February 24, 1957, and his alleged disability onset date is November 1, 2011. AR at 144, 146. He was fifty-four years old on the alleged disability onset date and fifty-six years old at the time of the hearing before the ALJ. Id. Plaintiff has a tenth grade education, and prior work history as an administrative assistant and property manager. Id. at 175. Plaintiff alleges disability

---

[1] Neither the AR nor the parties indicate whether Plaintiff's applications were denied on reconsideration. However, the parties do not raise the issue and the issue is not relevant to the Court's analysis. Thus, the Court declines to address it.

based on human immunodeficiency virus ("HIV"), depression, hand injury, tingling in forearms and hands, and left middle finger pain. Id. at 174.

## III.
## **STANDARD FOR EVALUATING DISABILITY**

To qualify for DIB or SSI, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her or him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she or he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[2]

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

3

    (4)    Is the claimant capable of performing work she or he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

    (5)    Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her or his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

**A.    STEP ONE**

    At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since November 1, 2011, the alleged onset date" of disability. AR at 16.

**B.    STEP TWO**

    At step two, the ALJ found Plaintiff "ha[d] the following severe impairments: HIV, left tennis elbow, left carpal tunnel syndrome, lumbar spine degenerative disc disease and cervical spine degenerative disc disease." Id.

///

///

### C. STEP THREE

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. at 17.

### D. RFC DETERMINATION

The ALJ found Plaintiff had the RFC "to perform less than the full range of light work . . . Specifically, [Plaintiff] can lift and carry twenty pounds occasionally and up to ten pounds frequently; stand, walk and sit for six hours total in an eight-hour workday. [Plaintiff] also can occasionally reach, push and pull with the non-dominant left upper extremity." Id. at 18.

### E. STEP FOUR

At step four, the ALJ found Plaintiff "is capable of performing past relevant work as an administrative clerk and apartment property manager. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity." Id. at 21. Accordingly, the ALJ found Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 1, 2011, through the date of this decision" and declined to proceed to step five. Id.

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents four disputed issues:

1. Whether the ALJ erred in rejecting Plaintiff's subjective symptom testimony.
2. Whether the ALJ erred in rejecting the opinion of Plaintiff's treating physician regarding Plaintiff's physical limitations.
3. Whether the ALJ erred in failing to develop the record concerning Plaintiff's mental impairment.
4. Whether the ALJ erred in relying on the vocational expert's response to an incomplete hypothetical question.

JS at 4.

The Court finds the second issue dispositive of this matter and thus declines to address the remaining issues. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

## VI.
## STANDARD OF REVIEW

Pursuant to Title 42 of the United States Code, section 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating a reviewing court "may not affirm simply by isolating a specific quantum of supporting evidence") (citations and internal quotation marks omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in her or his decision "and may not affirm the ALJ on a ground upon which [she or] he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (citation and internal quotation marks omitted).

## VII.
## **DISCUSSION**

In assessing medical opinions of Plaintiff's impairments, the ALJ gave "little weight" to a February 6, 2013 Physical Residual Functional Capacity Questionnaire completed by Plaintiff's treating physician and specialist in family and HIV medicine -- Medical Doctor James Adams of Westside Healthcare Center ("Westside HCC"). AR at 20. As set forth below, the Court finds the ALJ improperly weighed Dr. Adams' opinion and remands for further proceedings.

**A.  RELEVANT MEDICAL RECORDS**

Plaintiff was diagnosed with HIV in 1989 or 1990. Id. at 38. Medical records document Plaintiff's evaluation and treatment for HIV and other conditions from January 23, 2012 to April 11, 2013. The records establish the following:

On January 23, 2012, Plaintiff had a HIV Established Visit with Medical Doctor Vasant Dabhi of Westside HCC. Id. at 212-16. Dr. Dabhi physically examined Plaintiff and opined Plaintiff had joint pain in one of his hands and HIV. Id. at 212. Dr. Dabhi further opined Plaintiff's symptoms included tingling in his fingers and hands, and pain in his left middle finger. Id.

On March 29, 2012, Medical Doctor and Board Eligible Internist Homayoun Saeid physically examined Plaintiff and reviewed Plaintiff's medical records. Id. at 235-40. Dr. Saeid opined Plaintiff had tenderness in his back and stenosing tenosynovitis of the left middle finger. Id. at 238. Dr. Saeid's diagnostic

impressions of Plaintiff included: (1) "evidence of lateral epicondylitis of the left elbow;" (2) "chronic back pain with evidence of mild dextroscoliosis of the thoracic spine;" and (3) "tenderness and reduced range of movement of lumbar spine." Id. at 239.

On March 29, 2012, Medical Doctor and Radiologist T. Divakaran physically examined Plaintiff's back and completed a Radiology Report. Id. at 241. Dr. Divakaran opined Plaintiff had "[O]steopenia. [S]pondylosis with moderately advanced disc degeneration." Id.

On May 22, 2012, Single Decision Maker[3] L. Neal reviewed Plaintiff's medical records. Id. at 65-75. Neal concluded Plaintiff had HIV symptoms, arthritis, back tenderness, limited movement of the left elbow, and left wrist tenderness. Id. at 75.

On October 29, 2012, Plaintiff had a HIV Established Visit with Medical Doctor Marian Bakhtary of Westside HCC. Id. at 267-71. Dr. Bakhtary physically examined Plaintiff and stated Plaintiff had carpal tunnel syndrome, joint pain in his hands, and HIV. Id. at 267.

On November 19, 2012, Plaintiff had a HIV Established Visit with Dr. Adams. Id. at 262-66. Dr. Adams physically examined Plaintiff and noted: (1) Plaintiff complained of left elbow pain, and numbness and tingling in his fingers; and (2) Plaintiff's right middle finger was infected, sore, and not healing. See id.

On December 19, 2012, Plaintiff had an Office Visit with Medical Doctor Miguel A. Valdessuerias and Dr. Adams, who physically examined Plaintiff and opined "x[-]rays of [Plaintiff's] hands . . . reveal[] arthritis in first joint of left

---

[3] "In the single decisionmaker model, the decisionmaker will make the disability determination and may also determine whether the other conditions for entitlement to benefits based on disability are met. The decisionmaker will make the disability determination after any appropriate consultation with a medical or psychological consultant." 20 C.F.R. § 404.906.

hand" and Plaintiff felt pain in his hands arms, neck, back, and elbow. Id. at 259-61.

On February 6, 2013, Dr. Adams completed a Physical Residual Functional Capacity Questionnaire. Id. at 245-48. Dr. Adams noted he had treated Plaintiff since April 19, 2012 and diagnosed Plaintiff with HIV, bilateral carpal tunnel syndrome, hand arthritis, and neck degenerative disc disease. Id. at 245. Dr. Adams opined Plaintiff's symptoms included chronic arthritis, carpal tunnel syndrome, and hand pain rated as an eight out of ten -- which worsened with constant and repetitive actions. Id. Dr. Adams stated Plaintiff's treatment included chronic pain medication and antiretroviral therapy. Id. Dr. Adams opined Plaintiff would have to take a ten-minute break every hour during an eight-hour work day, and Plaintiff's impairments or treatment would cause him to miss work about three times a month. Id. at 246. In addition, Dr. Adams opined Plaintiff: (1) could never lift or carry twenty or fifty pounds; (2) could lift ten pounds only occasionally; (3) could sit for less than six hours in an eight-hour workday; (4) "needs frequent shifts;" and (5) had limited pushing and pulling abilities in his upper extremities. Id. at 246-47.

On April 11, 2013, Medical Doctor Cameron Adams performed nerve conduction studies on Plaintiff and completed an EMG / Nerve Conduction Study Report. Id. at 282-84. Dr. Cameron Adams concluded the studies' results were "abnormal" and "there [wa]s electrophysiological evidence of a mild left median neuropathy at the wrist, consistent with carpal tunnel syndrome." Id. at 282.

**B.   APPLICABLE LAW**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat

the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her or] his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth [her or] his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

While an ALJ is not required to discuss all the evidence presented, she or he must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster her or his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

///
///

## C.   ANALYSIS

Here, the Court finds the ALJ erred in giving "little weight" to treating physician Dr. Adams' opinion.  AR at 20.  In rejecting Dr. Adams' opinion, the ALJ failed to give "specific and legitimate reasons that are supported by substantial evidence in the record."  See Carmickle, 533 F.3d at 1164.

First, the ALJ improperly relied on only those portions of the records that bolstered her findings regarding Plaintiff's HIV symptoms, musculoskeletal system, and range of movement.  See, e.g., Holohan, 246 F.3d at 1207-08.  In rejecting Dr. Adams' opinion, the ALJ first stated Plaintiff's "HIV is asymptomatic; his musculoskeletal examination was normal, and he had a normal gait."[4]  Id.  However, the ALJ failed to explain her rejection of significant probative evidence demonstrating Plaintiff's HIV symptoms, persistent pain in his musculoskeletal system, and reduced range of movement.  See Vincent, 739 F.2d at 1394-95.  For example:

- On January 23, 2012, Dr. Dabhi opined Plaintiff had joint pain and Plaintiff's symptoms included tingling in his fingers and hands and pain in his left middle finger.  Id. at 212.

---

[4]   The Court notes, "[a]fter the symptoms associated with the initial stage subside, [HIV] enters what is referred to sometimes as its asymptomatic phase.  The term is a misnomer, in some respects, for clinical features persist throughout, including lymphadenopathy, dermatological disorders, oral lesions, and bacterial infections."  Bragdon v. Abbott, 524 U.S. 624, 635, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998) (holding HIV "is an impairment from the moment of infection" under the Americans with Disabilities Act of 1990).

Moreover, HIV symptoms may include musculoskeletal syndromes with muscle tenderness, arthritis, and spondylitis.  Nancy Lane, M.D., University of California San Francisco, Rheumatologic and Musculoskeletal Manifestations of HIV, HIV InSite Knowledge Base Center (Mar. 17, 2016, 8:28 AM) http://hivinsite.ucsf.edu/InSite?page=kb-04-01-15#S2X.  To the extent the ALJ found the relationship between Plaintiff's impairments and HIV ambiguous, such ambiguity "trigger[ed] the ALJ's duty to conduct an appropriate inquiry."  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks omitted); see McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy.").

1  - On March 29, 2012, Dr. Saeid's diagnostic impressions of Plaintiff included reduced range of movement of his lumbar spine. Id. at 239.
- On March 29, 2012, Dr. Divakaran opined Plaintiff had osteopenia and spondylosis with moderately advanced disc degeneration. Id. at 241.
- On May 22, 2012, Neal concluded Plaintiff had arthritis, back tenderness, limited movement of the left elbow, and left wrist tenderness. Id. at 75.
- On October 29, 2012, Dr. Bakhtary stated Plaintiff had carpal tunnel syndrome and joint pain in his hands. Id. at 267.
- On December 19, 2012, Dr. Valdessuerias and Dr. Adams opined Plaintiff's left hand had arthritis and Plaintiff felt pain in his hands arms, neck, back, and elbow. Id. at 259-61.
- Nerve conduction studies of Plaintiff on April 11, 2013[5] were "abnormal" and "there [wa]s electrophysiological evidence of a mild left median neuropathy at the wrist, consistent with carpal tunnel syndrome." Id. at 282.

Thus, the above records demonstrate the ALJ improperly relied on only those portions of the records that bolstered her findings while ignoring contrary records regarding Plaintiff's HIV symptoms, musculoskeletal system, and range of movement. See, e.g., Holohan, 246 F.3d at 1207-08.

  Second, the ALJ failed to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." See Reddick, 157 F.3d at 725. Instead, the ALJ made a

---

[5] Because the EMG / Nerve Conduction Study Report occurred after Dr. Adams' February 6, 2013 Physical Residual Functional Capacity Questionnaire, the Court assumes Dr. Adams did not rely on the nerve conduction studies. Nonetheless, the Court agrees with Plaintiff's contention that "the abnormal findings of this study did support [Dr. Adams'] earlier opinion regarding Plaintiff's functional limitations." JS at 21.

boilerplate statement that "the longitudinal medical record does not support the limitations opined by Dr. Adams, as it is not consistent with the record as a whole." AR at 20. The ALJ failed to set out a detailed explanation of why she was rejecting contrary medical evidence; rather, as set forth above, the ALJ simply ignored the medical records that supported Dr. Adams' opinion. See Reddick, 157 F.3d at 722-23. In making a boilerplate reference to "the longitudinal medical record," the ALJ failed her duty to state "specific and legitimate reasons that are supported by substantial evidence in the record." See Carmickle, 533 F.3d at 1164.

Therefore, the ALJ failed to meet the specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." Reddick, 157 F.3d at 725. Accordingly, the Court finds the ALJ improperly weighed treating physician Dr. Adams' opinion.

## VIII.
## RELIEF

### A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation and internal quotation marks omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation and internal quotation marks omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not

remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B.     ANALYSIS**

In this case, the record has not been fully developed.  The ALJ must reassess Plaintiff's limitations and their impact on the RFC determination.  Accordingly, remand for further proceedings is appropriate.

## IX.
## ORDER

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: March 17, 2016

HONORABLE KENLY KIYA KATO
United States Magistrate Judge